**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                                   Case No.: 25-42571

HL Pit Stop, LLC.                                        Chapter 11 Case (Subchapter V)

          Debtor.

---

**PLAN OF REORGANIZATION**
**FOR SMALL BUSINESS UNDER CHAPTER 11**

---

### INTRODUCTION

HL Pit Stop, LLC (the "Debtor") proposes the following Chapter 11 Plan of Reorganization for Small Business under Chapter 11 (the "Plan") pursuant to the provisions of the Bankruptcy Code.

Prior to voting to accept or reject this Plan, all creditors are encouraged to read and review the Plan in its entirety. **Please read all sections carefully and discuss them with your attorney, as your rights may be affected. If you do not have an attorney, you should consult with one.**

The Debtor strongly encourages all creditors to vote in favor of the Plan. The Plan is in the best interests of creditors because the Debtor's continued operations will generate cash flow for distribution to creditors. The alternative to confirmation of the Plan, and distribution of the payments required under the Plan, is a chapter 7 liquidation, in which creditors will receive less than the projections in this Plan.

### Article 1: Defined Terms

**1.1 Defined Terms in Bankruptcy Code.**

The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**1.2 Additional Defined Terms.**

(1) "Allowed" means with respect to any claim: (a) a proof of claim or a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either

is not a Contested Claim or has been allowed by a Final Order; or (c) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

(2) "Assumed Agreement" means a contract, lease, or other agreement listed on **Exhibit C**.

(3) "Bankruptcy Code" means Title 11 of the United States Code.

(4) "Bankruptcy Rule" means a Federal Rule of Bankruptcy Procedure.

(5) "Chapter 11 Case" means the Debtor's pending case under the Bankruptcy Code, identified in the caption at the top of this Plan.

(6) "Citizens" means Citizens State Bank of Waverly

(7) "Confirmation Date" means the date on which the Confirmation Order is entered.

(8) "Confirmation Order" means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(9) "Contested Claim" means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor's insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(10) "Court" means the United States Bankruptcy Court for the District of Minnesota, which properly exercises jurisdiction over the Chapter 11 Case.

(11) "Debtor" means HL Pit Stop, LLC

(12) "Effective Date" means the first business day following the date that is 14 days after the entry of the Confirmation Order.

(13) "IRS" means the Internal Revenue Service.

(14) "Petition Date" means August 7, 2025.

(15) "Plan" means this chapter 11 plan of reorganization as amended, revised, or modified.

(16) "Real Property" means the property located at 620 Dutch Lake Drive, Howard Lake, Minnesota 55349.

(17) "Reorganized Debtor" means the Debtor on and after the Effective Date.

(18) "SBA" means the United States Small Business Administration

**1.3    Exhibits.**

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan. The exhibits to the Plan include the following:

Exhibit A      Liquidation Analysis

Exhibit B      Three-Year Cash Flow Projections

Exhibit C      Assumed Agreements and Cure Amounts

**Article 2: Background Information Regarding the Debtor, Liquidation Analysis and Feasibility**

**2.1    Description and History of the Debtor's Business.**

The Debtor is a Minnesota corporation formed in January 2016. Its principal place of business and store location is 620 Dutch Lake Drive, Howard Lake, Minnesota 55349. The Debtor operates an A&W Restaurant. The Debtor also previously operated a small coffee shop and a convenient store at its location. Going forward, the Debtor will operate the A&W Restaurant and the remaining space at its location will be leased to other businesses. The Debtor has 34 employees, comprised of full and part-time staff.

The Debtor believes that this proposed Plan ensures the long-term viability of the Debtor and its continued operations in Howard Lake, Minnesota.

**2.2    Liquidation Analysis.**

The Plan must provide that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**. As set forth in the liquidation analysis, if the Debtor was forced to liquidate its assets in chapter 7, unsecured creditors would receive nothing. As a liquidation will result in the Debtor ceasing operations, no future income from the Debtor will be available to pay creditors. Thus, the best recovery for unsecured creditors depends on the continued operation of the Debtor.

**2.3    Ability to Make Future Plan Payments.**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information in **Exhibit B**. The Debtor's financial projections show that the Debtor will

have sufficient revenue to make payments on the Plan. The final Plan payment is expected to be paid in December 2028.

### Article 3: Classification of Claims and Interests

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

The following table designates the classes of claims against the Debtor and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan.

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| N/A | Administrative Expenses | No | No |
| N/A | Priority Claims | Yes | Yes |
| N/A | A&W Cure claim | Yes | Yes |
| 1-A | Secured Claim – Citizens | Yes | Yes |
| 1-B | Secured Claim – SBA, ODK Capital, Forward Fin. | Yes | Yes |
| 2 | Unsecured Claims | Yes | Yes |
| 3 | Equity Interest Holders | No | No |

### Article 4: Treatment of Administrative Expense Claims and Priority Tax Claims

Under section 1123(a)(1) of the Bankruptcy Code, Administrative Expense claims and priority tax claims are not in classes and are treated as unclassified claims. Under the Plan, the unclassified claims shall receive the treatment described below:

    **4.1    Allowed Administrative Expense Claims.**

Except as otherwise provided in this Article, holders of Allowed claims specified in section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Bankruptcy Court.

Professional fees and expenses, including those of the Debtor's attorney, the Debtor's accountant, and the Subchapter V trustee, incurred through the Effective Date and not previously Allowed shall be subject to Court approval. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than 30 days after the Effective Date. The Reorganized Debtor shall pay any Allowed professional fees and expenses (a) as set forth in **Exhibit B** or (b) as agreed by the holder of such claim. The Debtor estimates that the fees owed to its attorney Sieling Law, PLLC are $6,500.00, after Sieling Law's retainer fee is

exhausted; the estimated fees owed to the debtor's accountant are $1,000.00 and the estimated fees owed to the Subchapter V trustee are $5,000.

The Debtor does not believe there are any administrative claims of taxing authorities for post- petition taxes. The Debtor is current on all post-petition taxes.

**4.2** **Priority Claims.**

**Pre-petition Tax Claims**: The Minnesota Department of Revenue filed a proof of claim claiming a priority amount of $18,717.94. Such priority taxes will be paid in full with interest at a rate of eight percent, payable monthly in the amount of $587.72, commencing one month after the confirmation date and continuing for 36 months thereafter or until paid in full, whichever is sooner.

The IRS filed a proof claim claiming a priority amount of $13,154.93 for estimated taxes. If this amount has not been paid by the effective date, the priority amount owed to the IRS will be paid within 30 days after the Effective Date.

The pre-petition priority tax owed by the Debtor is nondischargeable pursuant to 11 U.S.C. §§ 523(a) and 1192(2). To the extent the Minnesota Department of Revenue and the IRS claim penalties or nonpriority taxes; such portions will be treated as a Class 2 claim, general unsecured claims.

All other Allowed claims not specifically treated in this Section and entitled to priority under section 507(a) of the Bankruptcy Code shall be paid in full in cash as soon as practicable following the later of: (a) the Effective Date, (b) the due date, or (c) the date on which such claims are Allowed.

**Article 5: Treatment of Classified Claims and Interest**

**Class 1-A: Secured Claim – Citizens State Bank of Wavery**

Class 1-A consists of the secured claim of Citizens, pursuant to certain loan agreements, which are secured by a blanket lien in substantially all the Debtor's assets. As of the Petition Date, the Debtor estimates the total amount owed to Citizens was approximately $1,992,873.00. The Debtor estimates that the liquidation value of the Debtor's assets totals approximately $52,000.00. *See* **Exhibit A**. The indebtedness owed to Citizens is also secured by a mortgage on the Real Property located at 620 Dutch Lake Drive, Howard Lake, Minnesota 55349. The Real Property is owned by DSR Land, Inc which leases the Real Property to the Debtor. The Real Property has a fair market value of $900,000.00. Citizens's secured claim will be deemed allowed in the amount of $952,000.00 and will be paid as follows: for a period of 360 months from the Effective Date at the annual interest rate of 6.5%, the Debtor will pay $6,017.00 monthly to Citizens. There is no early payoff penalty if the Debtor satisfies paying $952,000.00 to Citizens prior to the end of 360 months.

The remaining balance owed by the Debtor to Citizens, totaling approximately $1,040,873.00, shall be treated as a general unsecured claim in Class 2.

The Reorganized Debtor's obligation to pay the Class 1-A claim under the Plan shall be secured by the existing liens and mortgages of Citizens pursuant to all existing agreements between Citizens and the Debtor. Citizen's lien shall have the same priority, dignity, and effect as the pre-petition liens of Citizens as of the Filing Date.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor and Citizens may amend and restate any agreements between the parties to reflect the terms of this Plan to the extent that the Reorganized Debtor and Citizens agree that such formal amendment is required. Except as provided in the Plan, the terms of the existing agreements between Citizens and the Debtor shall remain in full force and effect.

The payment to the holder of the Class 1-A claim pursuant to this Article of the Plan shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Allowed Class 1-A claim as to the Debtor only. After the holder of the Class 1-A claim receives the payment of $952,000.00 pursuant to this Article, the holder of the Class 1-A claim shall execute a release of Citizens' liens on the Debtor's assets and the Real Property, including, without limitation, a UCC Termination Filing, a mortgage satisfaction, and any other document reasonably requested by the Reorganized Debtor to reflect the full satisfaction, settlement, release, and discharge of the Allowed Class 1-A claim.

### **Class 1-B: Secured Claim – SBA, ODK Capital, LLC and Forward Financing**

Class 1-B consists of the secured claim of the SBA, ODK Capital and Forward Financing, pursuant to certain loan agreements, which are secured by liens in the Debtor's assets. SBA's, ODK Capital's, and Forward Financing's liens on the Debtor's assets are junior in priority to the lien of Citizens. As of the Petition Date, the Debtor estimates the total amount owed to SBA was $514,735.59; the total amount owed to ODK Capital was $140,000.00; and the amount owed to Forward Financing was $35,241.00. After deducting the amount of the obligation owed by the Debtor to Citizens, the Debtor estimates $0.00 in available equity securing the obligations owed by the Debtor to SBA, ODK Capital and Forward Financing. The Class 1-B claims shall be deemed allowed in the amount of $0.00. The remaining balances shall be treated as a general unsecured claim in Class 2, which is further described below. The Debtor's obligation to pay the holders of Claim 1-B under the Plan shall be secured by the existing liens of such holder. After the Debtor satisfies the terms of this plan and payment pursuant to this Article, the holders of the Class 1-B claims are authorized to execute a release of their liens on the Debtor's assets, including, without limitation, a UCC Termination Filing, and any other document reasonably requested by the Reorganized Debtor to reflect the full satisfaction and release of the Allowed Class 1-B claim.

### **Class 2: General Unsecured Claims.**

Class 2 consists of all Allowed unsecured claims against the Debtor that are not entitled to priority and are not classified elsewhere in this Plan, including, without limitation, Citizens' unsecured deficiency claims of Citizens, the SBA, ODK Capital and Forward Financing as described above. Pursuant to such deficiency claims, the Schedules and the filed proofs of claim, the Debtor believes the general unsecured claims total approximately $1,819,734.00.

Holders of Allowed Class 2 claims shall receive their pro rata share of $26,000 pursuant to the Debtor's projections in **Exhibit B**, which shall follow the payment schedule below:

| Payment 1<br>July 2027 | Payment 2<br>July 2028 | Payment 3<br>August 2028 |
|---|---|---|
| $10,000 | $8,000 | $8,000 |

The payments shall be paid on a pro rata basis to each holder of an Allowed Class 2 claim.

Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid a Class 2 claim as permitted under the Bankruptcy Code or otherwise applicable law. The payments to the holder of the Class 2 claims pursuant to this Article shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2 claims.

**Class 3: Equity Interest Holders.**

Equity Interest Holders are people who hold an ownership interest in the Debtor. The members of Class 3 are David Rollins and Sandra Rollins, each owning 50 percent. The Rollins shall retain their equity interest in the Debtor.

**Article 6: Distributions and Claims Administration**

**6.1    Payments under the Plan.**

Subject to Sections 6.2-6.3 of this Plan, distributions shall be made as set forth in the treatments of each class of claims in this Plan. Payments under this Plan shall be made by check (mailed with first class postage pre-paid), ACH, or wire transfer to the holder of each Allowed claim. If made by check, payments shall be mailed to the claim holder at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules as of the Confirmation Date. Holders of Allowed claims as of the Confirmation Date may contact the Reorganized Debtor to amend their addresses or bank account information at:

HL Pit Stop, LLC
Attn: David Rollins
620 Dutch Lake Dr
Howard Lake, MN  55349

**6.2    Delay of Distribution on Contested Claims.**

No distribution will be made on account of a Contested Claim unless such claim is Allowed by a final non-appealable order.

**6.3     Settlement of Contested Claims.**

The Debtor will have the power and authority to settle and compromise a Contested Claim with court approval and compliance with Bankruptcy Rule 9019.

## Article 7: Executory Contracts and Unexpired Leases

**7.1     Acceptance and Rejection of Contracts and Leases and Cure Amounts.**

Each Assumed Agreement shall be assumed as of the Effective Date. For the avoidance of doubt, this includes the assumption of the contracts with DSR Land, Dolley's Petroleum, and A&W Franchising. All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements and were not previously assumed or rejected by order of the Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts, unexpired leases, and other agreements.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent notice or order, claims arising out of the rejection of an executory contracts or unexpired lease pursuant to this Article of the Plan must be filed with the Court within 30 days after the entry of the Confirmation Order and, upon allowance, shall be paid as a general unsecured creditor.

The Debtor proposed cure amounts for each Assumed Agreement and listed those proposed cure amounts on **Exhibit C**. Unless an objection is timely filed, then such amount shown on **Exhibit C** as "cure amount" shall be conclusively determined to be the amount required to cure any monetary or non-monetary default under any assumed executory contract or unexpired lease. In complete satisfaction of the cure amount owed to A&W Franchising, the Debtor will pay a total of $12,516.00, in 12 monthly payments of $1,043.00. There is no cure amount owed to Dooley's Petroleum. The cure amount owed to DSR Land is $63,600.12 which will be payable in 36 monthly installments of $1,766.67. DSR Land intends to pay these sums to Wright County for delinquent property taxes owed on the Real Property. The Debtor shall timely pay all ongoing obligations under the assumed contracts in the ordinary course.

## Article 8: Implementation and Effect of Confirmation of the Plan

**8.1     Title to and Vesting of Assets.**

All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date, to the full extent authorized by section 1141(b) of the Bankruptcy Code, all property of the Debtor and the estate vests in the Reorganized Debtor and such property is free and clear of all liens, encumbrances, claims, and interests of creditors, including any notices of *lis pendens*, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.

From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy

Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan. From and after the Effective Date, the Reorganized Debtor shall continue to be managed as it was prior to and during the Chapter 11 Case – David Rollins shall remain the president of the Debtor and Sandra Rollins shall remain the vice president of the Debtor. The Rollins' compensation arrangements shall remain the same as they were pre-petition with the Debtor, subject to periodic adjustment by the Reorganized Debtor in the ordinary course of its business operations after the Effective Date and as set forth in **Exhibit B**.

### 8.2 Discharge.

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from all claims that arose before confirmation of this Plan, except that the Debtor will not be discharged of any debt:

(a) imposed by this Plan; or

(b) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any claim provided for in this Plan until the Court grants a discharge on completion of all payments due within the three years of this Plan, or otherwise provided in section 1192 of the Bankruptcy Code.

A discharge under this Plan discharges, waives, and releases the Debtor from any debt or claim that arose before the Effective Date and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a proof of claim was filed or deemed filed under section 501 of the Bankruptcy Code; (b) such claim is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.

### 8.3. Distribution of Plan Payments.

If the Plan is confirmed pursuant to 11 U.S.C. 1191(a) or 1191(b), the Debtor will make all payments under this Plan notwithstanding the provisions of the Bankruptcy Code.

## Article 9: General Provisions

### 9.1 Default.
Nothing contained in this section will limit or affect any remedies available to creditors under the Bankruptcy code. If the Debtor fails to timely make a payment due to any class of this Plan, or if the Debtor fails to timely pay Professional Fees, the relevant creditor may send a written notice of default to the Debtor.

Unless the Plan expressly provides otherwise, if the Debtor fails to cure within 14 business days of such notice from a creditor, the relevant creditor shall be entitled to file an affidavit of default and obtain stay relief with respect to any collateral subject to its liens. All unsecured

creditors shall be entitled to treat this Plan as a contract and a default hereunder as a breach of contract by the Debtor.

**9.2    Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.3    Binding Effect.**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**9.4    Controlling Effect.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

IN WITNESS WHEREOF, the undersigned have executed this Plan of Reorganization for Small Business under Chapter 11 as of November 5, 2025.

                              HL Pit Stop, LLC

                              *s/ David Rollins*
                              By:   David Rollins
                              Its:   President

SIELING LAW, PLLC

By: *s/ Mary F. Sieling*
     Mary F. Sieling, (#389893)
     12800 Whitewater Dr, Ste. 100, #3201
     Minnetonka, MN  55343
     Phone: 612-325-1191
     Email: mary@sielinglaw.com

     Attorney for the Debtor